STUART, Justice
(concurring specially).
The trial judge in his final order stated:
“As previously noted in the June 20 Order, after the mother is proven to be unfit and unsuited to have custody, the father is entitled to custody against a non-parent (maternal grandmother) unless he is also proven to be unfit or unsuited. The maternal grandmother has produced no evidence whatsoever that the father is unfit to have custody. The only basis upon which this Court can determine that the father is ‘unsuited’ to have custody is the fact that the boys do not want to live with him in Scotts-boro and the fact that he has failed to adjust his situation to accommodate their needs. If this is legally insufficient, then this Court welcomes an appeal by the father.... ”
(Emphasis in the original.) There is ample evidence in the record from which the trial court could have determined that the father was an unfit parent: he was found in contempt of court on several occasions for failing to pay child support (he was at one point $7,240 in arrears and was found guilty of criminal nonsupport); he was convicted of assaulting the children’s maternal grandfather for which he served 6 months of a 12-month sentence; he attempted to abscond with the children during one visitation; he was unemployed and had been so for an extended period; he had no stable home to which to take the children; and he had failed to establish a relationship with the children so that they desired to live with him. For reasons that are not clear to me, the trial judge did not find him unfit.
Labeling a person as an “unfit parent” is a difficult thing for a juvenile or family court judge to do. Sometimes trial judges attempt to avoid it so as to spare a parent further mental anguish or in an attempt to mend a family split. The unpleasantness of labeling a parent unfit cannot be avoided where under the facts the natural parent is unfit and the best interest of the child requires that he or she be placed in the custody of a nonparent. While I do not understand why the trial court in this case did not find the father unfit, based upon the trial court’s findings I must reluctantly concur with the majority opinion.
I also make an additional observation. The filing of a notice of declaration for legitimation in the probate court is not the equivalent of filing a petition to establish paternity in the juvenile court. Section 26-11-2, Ala.Code 1975, provides:
“(a) A father of a bastard child may seek to legitimate it and render it capable of inheriting his estate by filing a notice of declaration of legitimation in writing attested by two witnesses, setting forth the name of the child proposed to be legitimated, its sex, supposed age and the name of mother and that he thereby recognizes it as his child and capable of inheriting his estate, real and personal, as if born in wedlock. The declaration, being acknowledged by the maker before the judge of probate of the county of the father’s residence or the child’s residence or its execution *1071 proved by the attesting witnesses, shall be filed in the office of the judge of probate of the father’s residence or the child’s residence.”
The legitimation statute, in addition to addressing the ability of a child born out of wedlock to inherit from his father, provides a mechanism for a possible name change to give the minor child his father’s surname if doing so is determined to be in the child’s best interest. Ala.Code 1975, § 26-11-2. Those are the two purposes of this statute. The probate court properly transferred this case to the juvenile court where paternity was adjudicated and child-support and visitation issues were decided.